MEMORANDUM *
1. Rivera moved to reopen her removal proceedings in 2011, over fifteen years af *693 ter the Immigration Judge (IJ) denied her applications for asylum, withholding of removal and relief under the Convention Against Torture (CAT). Because her mo-, tion to reopen was not filed within ninety days of the IJ’s 1995 decision or before September 30, 1996, 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.23(b)(1), it is time-barred unless relief is “based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.” 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).
The Board of Immigration Appeals (BIA) didn’t abuse its discretion in concluding that Rivera failed to present material evidence of changed circumstances in Guatemala. The principal piece of evidence that Rivera relied on was a 300% increase in the number of femicides in Guatemala between 1999 and 2008. But a substantial increase doesn’t necessarily mean a material increase. See Malty v. Ashcroft, 381 F.3d 942, 945 (9th Cir. 2004) (“The critical question is ... whether circumstances have changed sufficiently that a petitioner who previously did not 'have, a legitimate claim for asylum now has a well-founded fear of future persecution.”). As the BIA noted, “the documentation ... indicates that Guatemala has a population of approximately 14 million persons; yet, the most recent statistics ... show that 722 women were killed in Guatemala in 2008.” Assuming that women make up about half the population, 722 women represent little more than one-ten-thousandth of the female population in Guatemala.[1] Tragic as this is, it falls well short of the one-in-ten probability that, according to the Supreme Court, generally establishes a well-founded fear. I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); see also Al-Harbi v. I.N.S., 242 F.3d 882, 888 (9th Cir. 2001) (“[E]ven a ten percent chance of persecution may establish a well-founded fear.”). The dissent criticizes us for reading Cardoza-Fonseca to set a strict probability test. Dissent at 695. But even assuming that a probability lower than' one-in-ten may constitute a “reasonable possibility,” Cardoza-Fonseca, 480 U.S. at 440, 107 S.Ct. 1207, we do not see how the probability -of one-in-ten-thousand does. Because the submitted evidence fails to show that Rivera today would have a legitimate claim for asylum that she didn’t have in 1995, the BIA acted within its discretion in denying her untimely motion to reopen.
Even taken together with other evidence of violence against women in Guatemala, the femicide statistics don’t push Rivera over the threshold required for asylum eligibility. Rivera “simply recounts generalized conditions in [Guatemala] that fail to demonstrate that her predicament is appreciably different from the dangers faced by her fellow citizens,” and this isn’t sufficient to establish materially changed circumstances. Najmabadi v. Holder, 597 F.3d 983, 990 (9th Cir. 2010) (internal quotation marks and citation omitted).
Rivera criticizes the BIA for relying on In re S-Y-G-, 24 I & N Dec. 247 (BIA 2007) and characterizing the increase in femicide rate as “incremental or incidental.” In S-Y-G-, the BIA denied the petitioner’s untimely motion to reopen because *694 the change in China’s family planning policy was merely “incremental or incidental.” 24 I & N Dec. at 257. In that case, the BIA wasn’t using the terms “incremental or incidental” in some numerical sense. Rather, the BIA characterized the policy change as “incremental or incidental” because the petitioner had failed to articulate how the new policy was different from the previously enunciated policy “in some relevant and material way.” Id Similarly, the increase in the femicide rate—though it appears substantial in a numerical sense— had an “incremental or incidental” impact on Rivera’s asylum application.
The dissent attempts to distinguish this case from In re S-Y-G-, by pointing out that Rivera is not making the same argument that she first offered in 1995. Dissent at 695. We agree that Rivera’s initial application was based on persecution of her brother by guerillas. Id at 2 n.2. But we do not see the relevance of this' fact. Based on this, the dissent concludes that “the evidence Rivera submitted in support of the motion to reopen was plainly ‘previously unavailable’ and ‘qualitatively different.’ ” Id. at 2 (citing Malty, 381 F.3d at 945-46). Of course, this is true as a matter of logic any time a petitioner files a motion to reopen based on a new theory of asylum with evidence of change that took place since his initial application. But the central question in this case is whether the submitted evidence was material, not whether it was previously available or qualitatively different. We do not see how the fact that Rivera is asserting a new theory of asylum bears on the evidence’s materiality.[2]
2. The deportation of Rivera’s former abusive domestic partner to Guatemala back in 2000—eleven years before she moved to reopen her removal proceedings—doesn’t compel a contrary conclusion. As an initial matter, it’s unclear whether this constitutes a “country condition!] arising in [Guatemala].” 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added). But even if we assume that it does, as the BIA did, it wasn’t material. Rivera hasn’t presented any evidence that.her former abuser continued to threaten her or attempted to contact her after he left the United States. In the absence of any evidence of “individualized relevancy,” Najmabadi, 597 F.3d at 989, we cannot conclude that the BIA acted “arbitrarily, irrationally, or contrary to the law,” Movsisian v. Ashcroft, 395 F.3d 1095, 1098 (9th Cir. 2005) (citation omitted).
3. Rivera also seems to imply that recent Ninth Circuit cases constitute a material change in country conditions. But it is well-settled that a change in case law does not excuse an untimely filing of a motion to reopen. Azanor v. Ashcroft, 364 F.3d 1013, 1022 (9th Cir. 2004).
4. Because the BIA didn’t analyze whether Rivera presented a prima facie case for relief, neither do we. Rivera’s failure to present material evidence of changed circumstances in Guatemala independently supports the denial of her untimely motion to reopen the removal proceedings.
DENIED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. The dissent focuses on the change between 1999 and 2010, rather than the change between 1999 and 2008. See Dissent at 695. Because the number of femicides in Gua-témala dropped in 2009 and 2010, the femi-cide rate is even lower when calculated with the 2010 figure.

. If anything, that Rivera is 'asserting a new theory of asylum makes it more difficult to assess whether she could have asserted the same asylum claim back in 1995 and therefore what the incremental effect of her new evidence is.